United States District Court
Southern District of Texas
**ENTERED**
June 17, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| AMESHIA BLACKSHEAR, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-cv-03273 |
| | § | |
| SOUTH FORK CDJR, ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

Pending before me is a Motion for Summary Judgment filed by South Fork CDJR ("South Fork") and Quality Wrecker Ser ("Quality Wrecker"). *See* Dkt. 27. After carefully reviewing the parties' briefing, the summary judgment record, and the applicable law, I conclude that the motion should be **GRANTED**.

## BACKGROUND

In September 2021, Plaintiff Ameshia Blackshear ("Blackshear") approached South Fork, a franchised motor vehicle dealer, about the possibility of purchasing a vehicle. Blackshear eventually struck a deal for a 2017 Dodge Durango, paying a $2,500 down payment with the remainder of the sales price purchased on credit. The terms of the parties' agreement are set forth in a Motor Vehicle Retail Installment Contract (the "Contract") executed on September 21, 2021.

The Contract expressly requires Blackshear to maintain insurance on the vehicle:

> **AGREEMENT TO KEEP VEHICLE INSURED**. You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. The insurer must be authorized to do business in Texas.

Dkt. 27-3 at 5. Also on September 21, 2021, Blackshear signed a separate document, confirming her understanding that "it is required that [the purchased vehicle] be continuously covered with insurance against the risks of fire, theft[,] and collision." Dkt. 27-2 at 2. The Contract specifically provides that in the event Blackshear breaks any of the promises she made in the Contract, including her obligation to obtain insurance, South Fork "may repossess the vehicle," so long as it does so peacefully. Dkt. 27-3 at 5.

After signing the Contract, Blackshear took possession of the vehicle. South Fork then reached out to Blackshear on multiple occasions to obtain proof that Blackshear had obtained the contractually required insurance. Despite South Fork's repeated requests for Blackshear to secure insurance on the vehicle and provide proof of such insurance, Blackshear never did so. As a result, South Fork hired Quality Wrecker to repossess the vehicle. After Quality Wrecker repossessed the vehicle, South Fork refunded Blackshear's $2,500 down payment.

On October 6, 2021, Blackshear filed this lawsuit against South Fork and Quality Wrecker. Although her Original Complaint is tough to decipher, she does complain that South Fork failed to disclose finance charges, harassed her with threats and profane language, and then repossessed her vehicle. She asserts a laundry list of causes of action against South Fork for violations of: (1) the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*; (2) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; (3) 18 U.S.C. § 1341 (criminal mail-fraud statute); and (4) 18 U.S.C. § 1962(a) (civil RICO statute). Blackshear also claims that Quality Wrecker stole her car.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate only when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Shepherd v. City of Shreveport*, 920 F.3d 278, 282–83 (5th Cir. 2019) (quoting FED. R. CIV. P. 56(a)). "A material fact is one that might affect the outcome of the suit under governing law, and a fact issue is genuine if the

evidence is such that a reasonable jury could return a verdict for the non-moving party." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (cleaned up).

"A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quotations omitted). In deciding a summary judgment motion, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (cleaned up).

## ANALYSIS

I will walk through each cause of action identified in Blackshear's Amended Complaint.

**A.     TRUTH IN LENDING ACT**

TILA is a strict-liability statute that requires a lender in a commercial credit transaction to disclose certain terms and conditions of the transaction to a borrower prior to consummating the loan. *See* 15 U.S.C. § 1601 *et seq*. TILA's purpose is to promote the "informed use of credit . . . [and] an awareness of the cost thereof by consumers" by "assur[ing] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him." *Id*. at § 1601(a).

Under the authority of TILA, the Federal Reserve Board has promulgated rules to implement the statute. *See* 15 U.S.C. § 1604(a). These rules, found at 12 C.F.R. § 226 *et seq.*, are commonly known as "Regulation Z." Together, TILA and Regulation Z require lenders to make a series of material disclosures to borrowers for transactions that do not involve a continuing line of credit, such as South Fork's loan to Blackshear. *See* 15 U.S.C. § 1638 (listing required disclosures); 12 C.F.R. § 226.18 (listing required disclosures). To comply with its TILA duties, South Fork must disclose the identity of the creditor, the amount financed, the itemization of the amount financed, the finance charge, the annual percentage rate, the payment

3

schedule, the total of payments, and the total sales price. *See id.* Blackshear contends that South Fork violated TILA by "not fully disclos[ing] all details of a [f]inance charge or any information that is suppose[d] to be disclosed." Dkt. 9 at 1. The obvious problem with this argument is that the Contract conspicuously provides all the information that TILA and Regulation Z require be disclosed.

The Contract includes a box labeled "FEDERAL TRUTH-IN-LENDING DISCLOSURES," which provides as follows:

| FEDERAL TRUTH-IN-LENDING DISCLOSURES | | | | |
|---|---|---|---|---|
| **ANNUAL PERCENTAGE RATE** The cost of your credit as a yearly rate. | **FINANCE CHARGE** The dollar amount the credit will cost you. | **Amount Financed** The amount of credit provided to you or on your behalf. | **Total of Payments** The amount you will have paid after you have made all payments as scheduled. | **Total Sale Price** The total cost of your purchase on credit, including your down payment of $ 2,500.00 |
| 20.60 % | $ 24,498.68 | $ 32,035.00 | $ 56,533.68 | $ 59,033.68 |

| Your Payment Schedule Will Be: | | | (e) means an estimate |
|---|---|---|---|
| Number of Payments | Amount of Payments | When Payments Are Due | |
| 72 | $ 785.19 | MONTHLY | beginning 11/05/2021 |
| N/A | $ N/A | N/A | |
| | | N/A | |

Late Charge: If we do not receive your entire payment within  15  days after it is due (10 days if you are buying a heavy commercial vehicle), you will pay a late charge of  5%  of the scheduled payment.
Prepayment. If you pay early, you will not have to pay a penalty.
Security Interest. We will have a security interest in the vehicle being purchased.
Additional Information: See this document for more information about nonpayment, default, security interests, and any required repayment in full before the scheduled date.

Dkt. 27-3 at 2. The information provided in this box unquestionably satisfies South Fork's disclosure obligations under TILA and Regulation Z.

As far as Blackshear's complaint that South Fork failed to inform her of her right to rescind the transaction, that argument falls flat since Blackshear's financed purchase of a vehicle is not a transaction for which she had a right to rescission. The right of rescission provided for under TILA only applies to a "consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit

4

is extended." 15 U.S.C. § 1635(a). *See also Hardaway v. Toyota Fin. Servs.*, No. 4:21-CV-194-KPJ, 2022 WL 317758, at *3 (E.D. Tex. Feb. 2, 2022) ("Plaintiff has not alleged facts showing that the TILA right to re[s]cission applies to Plaintiff's purchase of the Vehicle."); *Walker v. U.S. Bank*, No. 3:21-cv-758, 2021 WL 5701498, at *3 (N.D. Tex. Nov. 30, 2021) (dismissing the plaintiff's TILA claim because the TILA rescission provisions did not apply to the plaintiff's "purchase of a Chevrolet Silverado, a vehicle which does not qualify as a 'principal dwelling'").

In sum, South Fork fully complied with its disclosure obligations under TILA. Blackshear's TILA claim fails as a matter of law.

**B.  FAIR DEBT COLLECTION PRACTICES ACT**

The FDCPA prohibits conduct designed to "harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. It also prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e. Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt collectors . . . and to . . . protect consumers against debt collection abuses." *Id.* § 1692(e).

Blackshear alleges that South Fork is subject to civil liability under the FDCPA "for [h]arassment, threats and profane language." Dkt. 9 at 1. In response, South Fork argues that even assuming its conduct was harassing, oppressive, or abusive, the FDCPA does not apply because South Fork was not a "debt collector." It is well-settled that the prohibitions of the FDCPA apply only to "debt collectors." *See Taylor v. Perrin, Landry, deLaunay, & Durand*, 103 F.3d 1232, 1234 (5th Cir. 1997). The FDCPA defines a "debt collector" as one who collects or attempts to collect debts owed or asserted to be owed to another. *See* 15 U.S.C. § 1692a(6). Creditors, like South Fork, who collect debts in their own name and whose principal business is not debt collecting, are not subject to the FDCPA. *See Bacon v. Sw. Airlines Co.*, No. CIV.A.3:97-CV-2211-L, 1999 WL 134569, at *2 (N.D. Tex. Mar. 5, 1999) (finding that "American Express cannot be a debt collector under the FDCPA" because "the FDCPA specifically excludes creditors who, while using their

own names, attempt direct collection of debts owed to them"). Consequently, Blackshear's FDCPA cause of action falls by the wayside.

C.     18 U.S.C. § 1341

Next, Blackshear asserts that South Fork has violated 18 U.S.C. § 1341, the federal criminal mail-fraud statute. This "statute prohibits in general terms the use of the United States mails in furtherance of fraudulent schemes." *United States v. Curry*, 681 F.2d 406, 410 (5th Cir. 1982). Importantly, § 1341 is a criminal statute that does not provide a private cause of action. *See Napper v. Anderson, Hensley, Shields, Bradford & Pritchard*, 500 F.2d 634, 636 (5th Cir. 1974). This claim must, therefore, be dismissed.

D.     18 U.S.C. § 1962(a)

Blackshear's live pleading asserts, without any elaboration whatsoever, that South Fork is "in violation" of 18 U.S.C. § 1962(a). Dkt. 9 at 1. "Subsection 1962(a) prohibits a person who has received income from a pattern of racketeering activity from investing that income in an enterprise." *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 202 (5th Cir. 2015). "To establish a § 1962(a) violation, a plaintiff must prove 1) the existence of an enterprise, 2) the defendant's derivation of income from a pattern of racketeering activity, and 3) the use of any part of that income in acquiring an interest in or operating the enterprise." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000).

Blackshear's § 1962(a) claim fails because the summary judgment evidence conclusively negates the second element of such a cause of action. The affidavit of Chris Godwin, South Fork's owner and managing partner, establishes that South Fork did not receive any income from its business dealings with Blackshear. South Fork returned her $2,500 down payment. Truth be told, South Fork actually lost money on the transaction since it had to pay Quality Wrecking to repossess the vehicle. Because South Fork did not derive any income on the transaction, the § 1962(a) must be dismissed.

6

### E. CONVERSION

Blackshear makes one claim against Quality Wrecker. She claims that Quality Wrecker stole her car. This is a straightforward common-law conversion cause of action. To prevail on a conversion claim under Texas law, Blackshear must establish that: (1) she owned, had legal possession of, or was entitled to possession of the property; (2) Quality Wrecker assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; (3) Blackshear made a demand for the property; and (4) Quality Wrecker refused to return the property. *See Freezia v. IS Storage Venture, LLC*, 474 S.W.3d 379, 386–87 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Blackshear's conversion claim flunks element one. No evidence remotely suggests that Blackshear owned, had legal possession of, or was entitled to possession of the vehicle. On the contrary, the Contract clearly provides that the automobile can be repossessed if Blackshear is in breach of her contractual obligations. Blackshear's failure to provide evidence of insurance coverage was a clear breach of the Contract, giving South Fork (and its agent, Quality Wrecker) the absolute right to repossess the vehicle. Summary judgment is appropriate on the conversion claim.

### CONCLUSION

For the reasons identified in this Memorandum and Opinion, South Fork and Quality Wrecker's Motion for Summary Judgment (Dkt. 27) is **GRANTED**. This case is dismissed. A separate final judgment will be issued.

SIGNED this 17th day of June 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE